**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2272-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WALTER TOWNSEND,

     Defendant-Appellant.

_____

Submitted October 23, 2018 – Decided November 26, 2018

Before Judges Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 02-01-0137.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura C. Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Walter Townsend appeals a December 6, 2017 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We incorporate by reference the procedural history and facts set forth by the Supreme Court in its opinion reversing the Appellate Division and reinstating defendant's conviction and sentence on direct appeal. State v. Townsend, 186 N.J. 473, 480-85 (2006).

On December 11, 1981, defendant lived with his girlfriend, Norma Williams, and her two sons, seven-year-old Jason and three-year-old Brian.[1]

> That evening, defendant entered the home and told the two boys to go upstairs. The boys did so but stopped on the staircase and watched as defendant repeatedly struck their mother with a two-by-four with exposed nails until she became motionless. Defendant then picked her up and called the boys to accompany him to the hospital.
>
> [Id. at 480.]

At the hospital, a police officer briefly questioned Williams about the assault. After she told the officer that she was struck by a car, she lost consciousness. Several hours later, a detective questioned her again. When

---

[1] Jason is Norma's son by another father. Brian is the son of Norma and defendant.

asked if defendant had hit her, Williams shook her head from side-to-side indicating "no." She also shook her head "no" when asked if a truck had struck her. When asked about the car, she nodded "yes." Williams died soon thereafter.

That night, Jason gave conflicting statements to the police about the incident. Initially, he told police that his mother had been hit by a red truck and "three men got out of the truck and beat her with sticks before leaving." Id. at 480-81. Later, Jason repeated his story about the red truck, but then said he did not see the three men beat his mother. Id. at 481. After Williams died, defendant and the boys were taken to the police station where Jason gave another statement in which he accused defendant of fighting with his mother and striking her with a board. Ibid. Jason told the officers that defendant ordered him to tell the story about the red truck and the three men. Id. at 481-82. After waiving his Miranda rights,[2] defendant denied influencing Jason's statement and stated he never threatened him. Defendant provided a vastly different version of events that placed him in a corner bar at the time of the assault upon Williams. Id. at 482.

Mercer County Medical Examiner Dr. Raafat Ahmad performed an autopsy on Williams's body and listed the manner of death as "undetermined."

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2272-17T4

Id. at 484. The police completed their investigation without filing any charges against defendant. Id. at 482.

In 2001, Jason and Brian contacted the Mercer County Prosecutor's Office and requested that the case be reopened. Id. at 483. In August 2001, the prosecutor reopened the investigation. Ibid. Additional witnesses were interviewed and gave statements. Ibid. When Dr. Ahmad reviewed the autopsy results again in May 2002, she concluded that Williams's injuries were more consistent with having been beaten to death than having been hit by a vehicle. Id. at 484.

On August 10, 2001, Brian gave a formal statement providing his version of the incident. He stated he observed defendant repeatedly strike his mother with a board containing exposed nails while she was on the couch.

On January 30, 2002, a Mercer County grand jury indicted defendant for first-degree murder, N.J.S.A. 2C:11-3(a)(2). A nine-day jury trial commenced in October 2002. Defendant did not testify at trial. The jury found defendant guilty of murder. The trial court imposed an extended sentence of "thirty years to life imprisonment" with five years of parole supervision.

In his direct appeal to this court, defendant argued that the admission of Williams's dying declaration did not justify the State's use of expert testimony

4

on battered women and battered woman's syndrome. He further argued that the State's twenty-year delay in prosecuting him violated his due process rights. We concluded that the State's delay did not offend due process, but reversed his conviction, holding the admission of the victim's dying declaration did not justify permitting expert testimony on battered women and battered woman's syndrome (BWS), and finding the failure to provide a jury instruction on the limited purpose for which the State could use such expert testimony was plain error. State v. Townsend, 374 N.J. Super. 25, 57 (App. Div. 2005).

The Supreme Court affirmed in part and reversed in part, ruling the trial court properly admitted expert testimony concerning the common characteristics of battered women and BWS, and the failure of the trial court to give a limiting instruction on the use of the expert's testimony was harmless error. Townsend, 186 N.J. 473. The Court further held the twenty-year delay between the date of the crime and the date defendant was indicted did not violate defendant's due process rights. The Court remanded the case to the trial court to reinstate the judgment of conviction and to correct the sentence.[3] Id. at 500.

---

[3] Resentencing was required because the sentence of thirty years to life imprisonment was unlawful. Id. at 485 n.2. When the crime was committed in 1981, "the version of N.J.S.A. 2C:43-7 in effect provided that the extended-term

Defendant appealed after the resentencing, and subsequently filed for PCR. The trial court dismissed the PCR petition without prejudice because of the pending sentencing appeal. We affirmed the judgment on an Excessive Sentence Oral Argument (ESOA) calendar on October 27, 2008, but remanded for recalculation of gap-time credits and for modification of defendant's fines.

On January 9, 2009, defendant reinstated his PCR petition. He was appointed PCR counsel. Through counsel, defendant argued ineffective assistance of trial counsel because: (1) trial counsel failed to zealously investigate the claims made by Brian and Jason Williams; (2) trial counsel failed to call an expert witness to rebut the testimony of the State's medical examiner; and (3) trial counsel failed to raise the issue of the court's failure to give the jury limiting instructions on the proper use of expert testimony elicited at trial with respect to the characteristics shared by battered women and women suffering from battered woman's syndrome.

In his pro se petition, defendant raised the following additional points:

> I. THE INADEQUATE REPRESENTATION THAT PETITIONER RECEIVED AT TRIAL FELL BELOW AN OBJECTIVE REASONABLE STANDARD, THUS VIOLATING HIS RIGHT TO EFFECTIVE

_____

sentence for a conviction of murder was a specific term of years between thirty years and life imprisonment." Ibid.

ASSISTANCE OF COUNSEL UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

A.  Trial counsel's failure to investigate whether the owner of Al's auto body shop (Tony Leopardi) was responsible for the death of Ms. Norma Williams (victim), served to deny defendant effective assistance of counsel.

B.  Trial counsel's failure to obtain a copy of Ms. Norma Williams['s] statement made to the Trenton Police Department prior to her death, regarding the break-in at Al's auto body shop, served to deny defendant effective assistance of counsel.

C.  Trial counsel's failure to investigate Ms. Norma Williams "Dying Declaration" i.e., that a red car had hit her, served to deny defendant effective assistance of counsel.

D.  Trial counsel was ineffective in his assistance through his failure to thoroughly pursue and present the D.N.A. evidence that were taken from Ms. Norma Williams['s] finger nails.

E.  An evidentiary hearing is required w[h]ere the defendant asserts a Prima Facie case involving facts which are not part of the record.

II.  Trial counsel was ineffective for failing to suppress the arrest warrant, as it was obtain[ed] in violation of defendant's Fourth Amendment right.

III.  This court should grant the defendant a new trial based on the newly discovered evidence.

IV.  Trial counsel failed to explain all factor[s] of the Trial case, and also available legal action options that were available to this defendant during trial, to the point necessary so that this defendant could have made a[n] informed decision(s).

V.  Grand Jury Indictment(s) were Insuf[f]icient Indictments.  Mr. Brian Williams and also Mr. Jason Williams both gave knowing and willing false statements to the Trenton Homicide Unit, Cold Case Squad Detective Mr. Albert DiNatale, for a wrongful purpose to gain financial benefits from their mother Ms. Norma Williams['s] death, by way of insurance funds.

[VI.]  Grand Jury Indictments were based upon the fruit of this poisonous tree.

[VII.]  Brian Williams later confessed this defendant[']s innocence in a letter to this defendant. Brian Williams also claimed, that, "he (Brian Williams) did not see this defendant kill his mother Ms. Norma Williams."

On October 7, 2011, the PCR judge issued a written opinion addressing the arguments raised in PCR counsel's brief.  The court found defendant failed to state a prima facie case for ineffective assistance of counsel and issued an order denying defendant's petition without an evidentiary hearing.  Defendant appealed, raising the following claims:

I. PCR COUNSEL VIOLATED <u>RULE</u> 3:22-6(d) DURING HIS REPRESENTATION OF [DEFENDANT].

A.  PCR Counsel Failed to Meaningfully Communicate with [Defendant].

B. PCR Counsel Failed to Investigate and Evaluate [Defendant's] Claims.

(1) PCR Counsel Failed to Investigate [Defendant's] Claim for a New Trial Based on Newly Discovered Evidence.

(2) Other Claims PCR Counsel Failed to Investigate.

C. PCR Counsel Failed to List and/or Incorporate by Reference [Defendant's] Pro Se Claims.

II. THE PCR COURT ABUSED ITS DISCRETION BY DENYING [DEFENDANT'S] REQUEST FOR AN EVIDENTIARY HEARING.

A. [Defendant] Established a Prima Facie Case of Ineffective Assistance of Trial Counsel for Failure to Call an Expert Witness to Rebut the State's Medical Examiner.

B. [Defendant] established a Prima Facie Case of Ineffective Assistance of Trial Counsel for Failure to Investigate the Motives of the Prosecution's Only Eyewitnesses.

C. [Defendant] Established a Prima Facie Case of Ineffective Assistance of Trial Counsel for Failure to Request a Limiting Jury Instruction Regarding BWS, Past-Acts Testimony and Dying Declaration Testimony.

The appellate panel affirmed the PCR court's denial of the points the PCR court addressed, but remanded those issues raised by defendant in his pro se PCR brief that were left unaddressed. State v. Townsend, No. A-4830-11 (App.

9

Div. July 16, 2015).  Specifically, the panel remanded two issues:  (1) whether initial PCR counsel failed to investigate defendant's claim for a new trial based on newly discovered evidence, which consisted of an alleged recantation letter from a trial witness; and (2) whether trial counsel's performance was deficient by: (a) failing to call an expert witness to rebut the State's medical examiner; (b) failing to investigate the motives of the prosecution's only eyewitnesses; and (c) trial counsel's failure to request a limiting jury instruction regarding BWS, past acts testimony, and dying declaration testimony.

The alleged recantation letter by trial witness Brian Williams is dated July 22, 2003.  In pertinent part, the version submitted by defendant states:  "I did not see you kill my mother, I told Jason.  He said he already knew."  Brian Williams denies he made this statement, asserting defendant altered the letter by inserting those two sentences.

On remand, the PCR court issued a comprehensive written opinion denying defendant's petition without an evidentiary hearing.  This appeal followed.  Defendant was appointed appellate counsel.

In this appeal, defendant argues:

> THIS MATTER MUST BE REMANDED FOR AN
> EVIDENTIARY HEARING BECAUSE THE
> DEFENDANT ESTABLISHED A PRIMA FACIE
> CASE OF INITIAL PCR COUNSEL'S

10

INEFFECTIVENESS FOR FAILING TO MOVE FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE; IN THE ALTERNATIVE, THIS MATTER MUST BE REMANDED FOR THE PCR COURT TO ASSESS THE RECANTER'S CREDIBILITY. (PARTIALLY RAISED BELOW)

A defendant is entitled to effective and competent assistance of counsel when counsel is appointed for a PCR petitioner. State v. McIlhenny, 333 N.J. Super. 85, 87 (App. Div. 2000). To be effective:

> PCR counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward. Thereafter, counsel should advance all of the legitimate arguments that the record will support. If after investigation counsel can formulate no fair legal argument in support of a particular legal claim raised by defendant, no argument need be made on that point. Stated differently, the brief must advance the arguments that can be made in support of the petition and include defendant's remaining claims, either by listing them or incorporating them by reference so that the judge may consider them.
>
> [State v. Webster, 187 N.J. 254, 257 (2006).]

The current version of Rule 3:22-6(d) requires PCR counsel to "advance all of the legitimate arguments requested by the defendant that the record will support." The rule further provides: "If defendant insists upon the assertion of any grounds for relief that counsel deems to be without merit, counsel shall list

11

such claims in the petition or amended petition or incorporate them by reference. Pro se briefs can also be submitted." R. 3:22-6(d). "To meet this mandate, PCR trial counsel must 'communicate with his client and investigate the claims' and 'then must fashion the most effective arguments possible.'" State v. Hicks, 411 N.J. Super. 370, 375 (App. Div. 2010) (quoting State v. Rue, 175 N.J. 1, 18-19 (2002)).

The remedy for PCR counsel's failure to meet the requirements imposed by Rule 3:22-6(d) is a new PCR proceeding. Hicks, 411 N.J. Super. at 376 (citing Rue, 175 N.J. at 4). "This relief is not predicated upon a finding of ineffective assistance of counsel" under Strickland v. Washington, 466 U.S. 668 (1984). Ibid. Rather, "Rule 3:22-6(d) imposes an independent standard of professional conduct upon an attorney representing a defendant in a PCR proceeding." Ibid.

The record reveals PCR counsel raised, briefed and argued the grounds asserted by defendant, including the demand for a new trial based on newly discovered evidence. As noted by the appellate panel, PCR counsel met the requirements imposed by Rue, Webster, and Rule 3:22-6(d):

> As to Point I, with the exception of the claims in subparagraph B that PCR counsel failed to investigate defendant's claims including newly discovered evidence, we affirm substantially for the reasons stated

12

by the PCR court. Defendant's claim that his PCR counsel failed to communicate with him and failed to present all the points that he requested be argued before the trial court lack merit, and are not supported by the record.

At the outset, we agree with the trial court that PCR counsel was aware of his obligation under State v. Rue, 175 N.J. 1 (2002), Webster, 187 N.J. at 257, and Rule 3:22-6(d). He attempted to present claims which enjoyed record support, and he incorporated defendant's pro se claims by reference. Moreover, PCR counsel acknowledged that defendant prepared a thorough submission, and did nothing to disparage any of the pro se arguments. See Rue, 175 N.J. at 4. Though PCR counsel may choose to stand on his or her brief at the PCR hearing, and is not required to further engage in expository argument, id. at 19, counsel "[is not] empowered to denigrate or dismiss the client's claims, to negatively evaluate them, or to render aid and support to the [S]tate's opposition. That kind of conduct contravenes our PCR rule." Ibid. Indeed, counsel did none of those things. Rather, at oral argument counsel expounded on one of defendant's claims, arguing that the filing of the Williams sons' civil lawsuit against the Trenton Police department, asserting improper investigation of their mother's death, lent credibility to defendant's alternative defense theory and claim of innocence. We conclude from the foregoing that PCR counsel appropriately presented defendant's claims for the trial court's consideration.

We also find that the trial court properly rejected defendant's claim asserting a lack of communication. Counsel asserted that he met with defendant three times to discuss the case, the evidence, and the claims to be raised in the petition. Although defendant later wrote to counsel expressing displeasure with those meetings

13

specifically, and with counsel's representation generally, defendant acknowledged to the court that two or three meetings occurred, and that all the points he wanted to raise were submitted between counsel's brief and his own.

Based on the foregoing, we conclude the court did not abuse its discretion in finding that defendant failed to satisfy the first Strickland prong, that PCR counsel's performance was deficient, on these two matters. Preciose, 129 N.J. at 463. Therefore, no evidentiary hearing was warranted.

[Townsend II, (slip op. at 18-20).]

While the panel remanded the issue of newly discovered evidence to the trial court, it did so because the PCR court did not make specific findings as required by Rule 1:7-4(a), and state its conclusions of law as required by Rule 3:22-11. Id. at 20. On remand, the PCR court engaged in a substantive analysis of the purported newly discovered recantation evidence.

For claims that evidence is newly discovered and sufficient to warrant a new trial, courts apply the following well-established standard:

[T]o qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.
[State v. Carter, 85 N.J. 300, 314 (1981).]

"Material evidence is any evidence that would have some bearing on the claims being advanced," and includes evidence which supports a general denial of guilt. Ways, 180 N.J. 188 (citations omitted). "Moreover '[d]etermining whether evidence is merely cumulative, or impeaching, or contradictory' necessarily implicates prong three, 'whether the evidence is of the sort that would probably change the jury's verdict if a new trial were granted.'" State v. Nash, 212 N.J. 518, 549 (2013) (quoting State v. Ways, 180 N.J. 171, 188-89 (2004)). Furthermore, "evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory." Ways, 180 N.J. at 189 (citation omitted). Accordingly, "evidence [which] would shake the very foundation of the State's case and almost certainly alter the earlier jury verdict" could not be categorized as "merely cumulative." Ibid. "[U]nder the Carter analysis, prongs one and three are inextricably intertwined." Nash, 212 N.J. at 549.

"Prong two requires that 'the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence.'" Id. at 550 (quoting Ways, 180 N.J. at 192). "The defense must 'act with reasonable dispatch in searching for evidence before the start of trial.'" Ibid. (quoting Ways, 180 N.J. at 192). "[E]vidence clearly

15

capable of altering the outcome of a verdict that could have been discovered by reasonable diligence at the time of trial would almost certainly point to ineffective assistance of counsel." Ibid. (alteration in original) (quoting Ways, 180 N.J. at 192).

The Supreme Court has cautioned such evidence "must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Ways, 180 N.J. at 187-88.

The test to be applied by the trial court when evaluating an alleged recantation upon a motion for a new trial is:

> whether it casts serious doubt upon the truth of the testimony given at the trial and whether, if believable, the factual recital of the recantation so seriously impugns the entire trial evidence as to give rise to the conclusion that there resulted a possible miscarriage of justice. His first duty is, therefore, to determine whether the recanting statement is believable.
>
> [State v. Carter, 69 N.J. 420, 427 (1976) (citing State v. Puchalski, 45 N.J. 97, 107-108 (1965))].

"Courts generally regard recantation testimony as suspect and untrustworthy," especially in cases of a post-trial recantation by a witness who testified for the State at trial. Ibid. (citation omitted). "Consequently, the burden

16

of proof rests on those presenting such testimony to establish that it is probably true and the trial testimony probably false." Ibid. (citations omitted).

Defendant argues on appeal that he established a prima facie case of initial PCR counsel's ineffective assistance for failing to move for a new trial based on newly discovered evidence, and was therefore entitled to an evidentiary hearing. Defendant asserts the Brian Williams' alleged recantation letter constituted newly discovered evidence sufficient to warrant the grant of a new trial.

The PCR court accepted the supposed recantation letter as "newly discovered," in light of a showing from defendant that he reached out to several attorneys, as early as 2003, to look at the letter. However, the court found the recantation letter failed as new evidence under the third Carter prong, because significant and credible other evidence demonstrated petitioner's guilt. The PCR judge noted the following, overwhelming evidence of defendant's guilt:

> Jason was the primary eyewitness and testified to Brian witnessing the beating as well; a neighbor testified to hearing the victim scream for her life inside the house and another neighbor saw petitioner ram his truck into his fence, suggesting an attempt to stage the scene; one of the victim's childhood friends testified petitioner himself confessed his guilt to her a month and a half after victim's death; after the victim had died, an officer overheard petitioner telling Jason not to say anything to the police; and finally, petitioner has given at least three different accounts of how Norma Williams died. First, when interviewed by police immediately after Norma's

17

death in 1981, petitioner told police a red truck hit her. Second, as mentioned above, petitioner told a childhood friend of Norma's that he was responsible. Third, in 1996 petitioner told Norma's son Freddie that Brian, who was three at the time of Norma's death, ran over her with a truck. Furthermore, petitioner's first story that a red truck hit Norma was neither supported by the state of the crime scene nor Norma's injuries. In light of this myriad other evidence, the [c]ourt cannot find that the newly-discovered evidence would likely change the jury's verdict if a new trial were granted.

Additionally, the PCR judge found the letter could not be viewed as reliable recantation evidence because the declarant, Brian Williams, adamantly denied making the recantation and consistently reaffirmed his trial testimony that he witnessed defendant kill his mother throughout his lengthy deposition. During his deposition in 2006, Brian testified in response to a question regarding the alleged recantation letter: "This is a letter which was altered. This was the letter the prosecutors presented to me when [petitioner] slipped in a sentence and changed my handwriting. This is not the original letter." As the PCR judge noted: "everything in [Brian's] deposition indicates he truly holds petitioner responsible for the death of his mother, and nothing suggests he was motived by financial gain."

Finally, the PCR judge explained:

where there are two different versions of the same letter, it stands to reason at least one of them must have

18

been altered. This [c]ourt notes it is significantly easier to add to a handwritten document than it is to take something out without leaving clear signs of tampering. There does not appear to be any such indications of tampering on the letter Brian claims to have written, which lacks the exculpatory line. . . . [T]he newly discovered evidence lacks credibility and would be unlikely to change the outcome of the trial.

The record amply supports the PCR judge's conclusion that the purported recantation is not the sort of evidence which would probably alter the outcome of a new trial, because it is inherently suspect, the declarant denies he recanted his trial testimony, and there is overwhelming evidence of defendant's guilt which is unaddressed by the letter.

A defendant is only entitled to an evidentiary hearing when a prima facie case in support of post-conviction relief is established, the court determines there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. Rule 3:22-10(b). A prima facie case is established when defendant demonstrates a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits. Ibid.

Defendant did not demonstrate ineffective assistance of PCR counsel or establish a prima facie case for PCR based on the purported newly discovered

recantation evidence. Accordingly, he was not entitled to an evidentiary hearing, R. 3:22-10(b), and his petition was properly denied by the PCR court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2272-17T4